**WORTHINGTON PUMP & MACHINERY CORPORATION v. LOCAL NO. 259 OF THE UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA et al.**

No. 3714.

District Court, D. Massachusetts.

Oct. 29, 1945.

James M. Healy and Avery, Healy & Button, all of Holyoke, Mass., for plaintiff.

---

Harold B. Roitman, of Boston, Mass., Grant & Angoff, and Sidney S. Grant, all of Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case arises on a motion to dismiss a complaint for declaratory relief filed in this court on May 15, 1945. In view of the nature of the controversy it seems to me appropriate for me to state at once from the bench my conclusion.

The plaintiff is a Delaware corporation. In the complaint the defendants named are Local No. 259 of the United Electrical Radio and Machine Workers of America, which is not alleged to be a corporation and which may be assumed to be a voluntary association; the individual Massa and the individual Hogan, both of whom are alleged to be residents of Massachusetts. There is an allegation that "the members of" Local 259 "are citizens of Massachusetts."

The Bill of Complaint, in substance, asks for the construction of certain provisions of a collective bargaining agreement made on November 17, 1943, between the plaintiff and the Local. It is not asserted that there were any other parties to the contract, and the annexed Exhibit "A" would indicate that there were no other parties. It has been agreed between counsel in open court that, as of May 15, 1945, the collective bargaining contract, Exhibit "A", was in force and effect as a result of an understanding between the plaintiff and the Local that, pending negotiation and execution of the new contract, the old contract executed in 1943 should govern their relations.

According to the bill, the defendant Hogan, an hourly paid employee, was dismissed on March 24, 1945, that is to say, approximately six weeks prior to the filing of the Bill of Complaint. The bill does not state the rate of wages or the weekly or other earnings of the aforesaid Hogan. In open court, plaintiff's counsel indicated that he was prepared to show that the annual earnings were in the neighborhood of $3,000 to $4,000.

The complaint states that the union requested to have the matter of the defendant Hogan's discharge arbitrated under the provisions of the aforesaid collective bargaining agreement but the plaintiff declined, on the ground that the matter was not a dispute arising under said agreement and was therefore not appropriate for arbitration under said agreement.

Paragraph 6 of the complaint reads as follows:—"The controversy was duly certified to the National War Labor Board on April 3, 1945. On April 25, 1945 the War Labor Board voted: 'That inasmuch as the contract between the parties provides for arbitration for the settlement of grievances, the case should be submitted to arbitration in accordance with the contract. Concerning the proper procedure the Board voted unanimously that the question of arbitrability should be placed in the same proceeding before the arbitrator who will, if necessary, make a determination of the case on its merits. In the light of its considerable experience with the problem of arbitration, the Board feels that a single proceeding is sufficient even when claims of nonarbitrability are involved.'"

An affidavit filed at this hearing, which by concession of the plaintiff may be considered by the Court, shows that the Regional War Labor Board for the First Region, on June 29, 1945, issued a directive order deciding the dispute between the parties in accordance with the following terms and conditions:—

"1. The parties are hereby directed to use the grievance procedure of the contract for the disposition of the grievance involving Francis W. Hogan.

"2. The arbitrator shall rule first on the arbitrability of the grievance under the contract and he shall rule on the merits of the case only in the event he finds the grievance is properly arbitrable."

The plaintiff filed a petition with the First Regional War Labor Board on July 12, 1945, requesting review of the directive order. August 20, 1945, the Regional War Labor Board refused a review but transferred the case to the National War Labor Board in Washington, D. C., where the case is now awaiting final review by the National War Labor Board.

1. This Bill of Complaint purports to invoke the socalled diversity jurisdiction of the United States District Court. In order to establish such jurisdiction the plaintiff must show that there is between the plaintiff on the one hand and the defendants on the other hand diversity of citizenship and that there is an amount of $3,000 involved in controversy. While the Court may be skeptical as to whether each and every member of Local 259 is a citizen of the United States and a citizen of a State other than Delaware (not including the

District of Columbia or any other foreign country), and while the Court may be skeptical of the capacity of the plaintiff, in view of the wage scale of Mr. Hogan and in view of the short period left for the collective agreement to run, to show that there is involved $3,000 exclusive of interest and costs, nonetheless, upon the face of the Bill of Complaint there are sufficient allegations to withstand a motion to dismiss on the ground of lack of diversity jurisdiction. Nothing set forth in this paragraph is intended to intimate that it would not be necessary, during the trial of the case, to dismiss the bill for lack of jurisdiction.

 2. The principal and perhaps the only properly joined defendant is Local No. 259 of the United Electrical Radio and Machine Workers of America. It is a contract between the plaintiff and defendant local which is in dispute and as to which a construction by this Court is invited. The union is apparently a voluntary association and in any event is not alleged to be a corporation. In this United States District Court, sitting in a matter in which it is alleged that there is diversity jurisdiction, the law of Massachusetts is controlling in determining the capacity of the parties and their suability at law. It is settled by a line of cases culminating in Becker v. Calnan, 1943, 313 Mass. 625, 633, 48 N.E.2d 668, that in Massachusetts a labor union is not a corporate entity, may not be sued as a person, and may not be subjected to any decree. The aforesaid case of Becker v. Calnan arose several years subsequent to the passage of the State Labor Relations Act of Massachusetts, and there is no reason to believe that, in Massachusetts, the passage of that or comparable State or Federal enactments gives to a labor union the status of a Massachusetts corporate entity or anything akin thereto. The dicta of Mr. Justice Murphy in United States v. White, 1944, 322 U.S. 694, 701–704, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202, are to be understood merely as commenting upon the status of a labor union in connection with certain Federal statutes. Nothing said in that opinion implies that, when a question arises in a suit where diversity jurisdiction is alleged, the dicta of Mr. Justice Murphy rather than the decisions of the highest court of the State in which the District Court sits are to be controlling. In the light of what has been said, the motion to dismiss would have to be granted in this case, if for no other reason, on the ground that the party whose contract is the principal subject of complaint and who has been joined as a defendant is not suable in this court and the only two members thereof who have been sued and served are not alleged to have been sued in a representative capacity.

 3. Aside from the jurisdictional issues heretofore mentioned, this case must be decided in the light of well settled principles governing suits for declaratory judgments. In such suits, as is recognized in Western Electric Co. v. Hammond, 1 Cir., 1943, 135 F.2d 283, the Court must exercise a sound judicial discretion as to the propriety of the relief sought. In this case there are factors which lead the Court in its discretion to deny jurisdiction, even if it as matter of law were able to exercise such jurisdiction.

Paragraph 6 of the complaint and the affidavit here filed show that there has been presented in another forum an issue much like the one presented in the bill of complaint. That forum is the National War Labor Board established under the authority of the War Labor Disputes Act of June 25, 1943, c. 144, 57 Stat. 163, 50 U.S.C.A. Appendix § 1501 et seq. The efforts to secure a final determination by that Board have not yet been completed. In that respect the present case is unlike Oil Workers International Union Local No. 463 v. Texoma Natural Gas Co., 5 Cir., 1944–1945, 146 F.2d 62.

 Although there have been a certain number of cases in the United States Courts under the Declaratory Judgments Act, 28 U.S.C.A. § 400, in which United States Courts have interpreted collective bargaining agreements, this Court should be reluctant to allow itself to be invited into that field of controversy unless the parties have proceeded in accordance with the national policy that is embodied in the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. § 101 et seq. The Norris-LaGuardia Act, in its purpose to invite the parties to resort to mediation and to like administrative aids rather than to a judicial settlement of their controversies, has been carried beyond the field of labor injunctions to which the Norris-LaGuardia Act in terms is applicable. It is a familiar example that the purpose of the Norris-LaGuardia Act has been used in the interpretation of the Federal Anti-Trust Acts, 15 U.S.C.A. § 1 et seq., and their application to labor unions. United States v. Hutcheson, 312

U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. While I am not prepared to state that the Norris-LaGuardia Act must be "interlaced" with the Declaratory Judgments Act, I am persuaded that in the ordinary case, unless there has been a complete exhaustion of administrative remedies, there ought to be great reluctance on the part of any Federal Court to intervene to construe a labor agreement.

Motion to dismiss the complaint is granted, with costs.