Grafton
No. 7857

GLENN W. BRICKER, M.D.

v.

HENRY D. CRANE, JR., M.D., & a.

April 25, 1978

*Perkins, Upshall, & Robinson*, of Concord (*Harold W. Perkins* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden*, of Concord (*Martin L. Gross* orally), for the defendants Doctors Crane, DeWitt, Johnson, McIver, Archibald, and Olmstead.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Eugene M. VanLoan III* orally), for the defendants Doctors Crane, DeWitt, Kirk-Hurme, McIver, Johnson, Archibald, Olmstead, and Arthur Wadleigh, Priscilla D. Guinan, Jeannette D. Connary, Barbara McGlone, Edward C. Cayley, and Pascoe Roberts.

*Wescott, Millham & Dyer,* of Laconia (*Peter Millham* orally), for the defendants.

FLYNN, J. (By special assignment pursuant to RSA 490:3). This case is the most recent skirmish in a long legal combat which threatens to become a modern *Jarndyce v. Jarndyce,* C. Dickens, Bleak House *passim* (1853). The earlier battles are described fully in *Bricker v. Sceva Speare Hosp.,* 110 N.H. 412, 270 A.2d 358 (1970); *Bricker v. Sceva Speare Hosp.,* 111 N.H. 276, 281 A.2d 589 (1971), *cert. denied,* 404 U.S. 995 (1971); *Bricker v. Crane,* 468 F.2d 1228 (1st Cir., 1974), *cert. denied,* 410 U.S. 930 (1973); *Bricker v. Sceva Speare Hosp.,* 114 N.H. 229, 317 A.2d 563 (1974); *Bricker v. Sceva Speare Hosp.,* 115 N.H. 709, 350 A.2d 623 (1975). These cases are all the outgrowth of the refusal of the Sceva Speare Memorial Hospital, in Plymouth, New Hampshire, to reappoint the plaintiff, Glenn W. Bricker, a physician in Ashland, New Hampshire, to its medical staff in 1970.

The action in the instant case is brought by the plaintiff against the defendants alleging that the defendants wrongfully conspired to interfere with the plaintiff's contractual relationship with the Sceva Speare Memorial Hospital and in particular with the plaintiff's medical staff membership and privileges at Sceva Speare.

The thirteen defendants in this action, who are associated in one capacity or another with Sceva Speare, can be categorized as follows: (1) physician members of the Active Medical Staff and the Credentials Committee; (2) members of the Joint Conference Committee; (3) Executive Committee of the Board of Directors; (4) Barbara McGlone, R.N., Director of Nursing Service. The defendants moved to dismiss the plaintiff's action on the ground that it was barred by the judgment in a prior equity suit under the doctrines of res judicata and collateral estoppel. The question whether the defendants' motions to dismiss should be granted was reserved and transferred without ruling by *Keller,* C. J.

The facts that give rise to this litigation are reported in *Bricker v. Sceva Speare Hosp.,* 111 N.H. 276, 281 A.2d 589 (1971) (sometimes hereinafter referred to as the "prior suit"). These facts need be

repeated only briefly. The plaintiff was a member of the active medical staff at Sceva Speare from 1963 to October 1970, when the plaintiff was notified by the hospital that his medical staff privileges were being terminated. The plaintiff then brought a petition for injunctive relief in the superior court. In his petition, Doctor Bricker alleged, along with other allegations which are not relevant here, that: his failure to be reappointed was due to his testifying as a specialist in the field of legal medicine against other doctors in malpractice actions; his due process rights were violated by the hospital's failure to provide him with a specification of charges; and the decision not to reappoint him to the hospital staff was arbitrary, capricious, and unreasonable.

The Trial Court (*Johnson*, J.) found and ruled, *inter alia*, that: Doctor Bricker had been a disruptive influence at the hospital; his medico-legal activities had not played a substantial role in his non-reappointment; and the hospital's action was neither arbitrary nor unreasonable and was justified under the circumstances. This court sustained the trial court's findings and rulings that the plaintiff's exclusion from the hospital was justified. *Bricker v. Sceva Speare Memorial Hospital*, 111 N.H. 276, 281 A.2d 589 (1971), *cert. denied*, 404 U.S. 995 (1971).

In addition, as previously indicated, questions arising out of the hospital's decision not to reappoint the plaintiff were presented to appellate courts on subsequent occasions. *See Bricker v. Sceva Speare Hosp.*, 114 N.H. 229, 317 A.2d 563 (1974) (upholding the trial court's denial of a new trial based on allegations of newly discovered evidence and prejudice of the trial judge); *Bricker v. Sceva Speare Hosp.*, 115 N.H. 709, 350 A.2d 623 (1975) (upholding the trial court's denial of a new trial based on allegations of fraud in the original trial). The plaintiff has also resorted to the federal courts for relief against the hospital's decision not to reappoint him. *Bricker v. Sceva Speare Hosp.*, 339 F. Supp. 234 (D.N.H. 1972), *aff'd*, *Bricker v. Crane*, 468 F.2d 1228 (1st Cir. 1974), *cert. denied*, 410 U.S. 930 (1973).

In the present action, the plaintiff seeks damages against the defendants individually, alleging that his nonreappointment to the medical staff at Sceva Speare resulted from a conspiracy among the defendants to cause his discharge from the hospital staff. The plaintiff claims that the defendants acted "with malicious motive, without just cause or excuse, and with the wilful intent to injure plaintiff," and that the defendants acted "without legitimate cause or justification." The defendant McGlone, as director of nursing services, and the other

defendants as members of the hospital's Credentials Committee, Joint Conference Committee, or Executive Committee of the Board of Directors, participated in the decision not to reappoint the plaintiff and were responsible for advising and directing that this decision be made.

It is clear that the plaintiff's declaration states a cause of action. "One who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby." Restatement of Torts § 766; *Griswold v. Heat Corp.*, 108 N.H. 119, 124, 229 A.2d 183, 187 (1967); *Russell v. Croteau*, 98 N.H. 68, 69, 94 A.2d 376, 377 (1953). An action for interference with contractual relations cannot succeed, however, where the defendant's actions were justified under the circumstances. *Wilko of Nashua, Inc. v. TAP Realty, Inc.*, 117 N.H. 843, 379 A.2d 798 (1977); *Morra v. Hill*, 103 N.H. 492, 494, 175 A.2d 824, 826 (1961); *Huskie v. Griffin*, 75 N.H. 345, 348, 74 A. 595, 596 (1909). *See also* W. Prosser, Law of Torts § 129, at 942 (4th ed. 1971); J. Dooley, Modern Tort Law § 44.09 (1977).

The defendants assert that the plaintiff has already had his day in court upon the same facts in the prior suit and should be barred from further litigation. The defendants moved to dismiss first on the ground that the adjudication in the prior suit bars this tort action by the doctrine of res judicata. The defendants also argue in the alternative that the plaintiff should be collaterally estopped on the ground that the issue whether they acted with justification in directing the plaintiff's removal was decided in the prior suit and operates as a bar to further litigation of this issue in the present action.

Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end. *University of N.H. v. April*, 115 N.H. 576, 578, 347 A.2d 446, 449 (1975); Restatement (Second) of Judgments § 48, Comment *a* (Tent. Draft No. 1, 1973).

Current usage gives the term res judicata a broad meaning covering all the various ways in which a judgment in one action will have a binding effect in another action. *Ainsworth v. Claremont*, 108 N.H. 55, 56, 226 A.2d 867, 869 (1966). "The heart of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving

the same cause of action." *Concrete Constructors, Inc. v. The Manchester Bank,* 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). Under the doctrine, a final judgment on the merits in one suit absolutely bars a subsequent suit involving the same parties, or their privies, as to all matters which were litigated, or might have been litigated, in the first suit, absent some extenuating circumstances. *Indian Head Nat'l Bank v. Simonsen,* 115 N.H. 282, 284, 338 A.2d 546, 547 (1975); *Laconia Nat'l Bank v. Lavallee,* 96 N.H. 353, 355, 77 A.2d 107, 108 (1950). Collateral estoppel, which is an extension of the doctrine of res judicata, bars the same parties, or their privies, from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated and determined against them in a prior suit. *McGrath v. McGrath,* 109 N.H. 312, 315, 251 A.2d 336, 339 (1969).

The plaintiff's present action for the tortious interference with a contractual relation proceeds upon a different cause of action from his former claim that the decision not to reappoint him was arbitrary, capricious, and unreasonable. *See McQuaid v. Michou,* 85 N.H. 299, 157 A.881 (1932). The defendants must therefore rely on collateral estoppel, and our inquiry must be directed to the prior suit to determine whether the question now raised was directly in issue and actually tried. *McGrath v. McGrath,* 109 N.H. 315, 251 A.2d 339; *Ainsworth v. Claremont,* 108 N.H. at 57, 226 A.2d at 869.

In the prior suit the trial court, after a full hearing of two days, with the plaintiff being represented by able counsel, found that the board's action in refusing to reappoint the plaintiff was neither arbitrary nor capricious and was reasonable under all the circumstances. After weighing the respective interests of the plaintiff and defendant, Sceva Speare Hospital, the court then concluded that the board was justified in refusing to reappoint the plaintiff. This decision, as previously noted, was affirmed on appeal, *Bricker v. Sceva Speare Hosp.,* 111 N.H. 276, 281 A.2d 589 (1971), and we think that it is a mortal blow to the maintenance of the present action, because the issue of justification, now being raised in the plaintiff's present tort action, is identical to that tried and adjudicated in the prior suit.

"The decisions in this state, in the final analysis, have always turned on whether there had been a full and fair opportunity to the party estopped to litigate the issue barring him. . . ." *Sanderson v. Balfour,* 109 N.H. 213, 216, 247 A.2d 185, 187 (1968). It is undisputed that the defendants in this action were responsible for directing that the hospital refuse to reappoint the plaintiff. Whether their

actions were just under the circumstances, because pursued in the interest of the hospital and in good faith, was directly in issue and decided adversely to the plaintiff in the prior suit. *Bricker v. Sceva Speare Hosp.*, 111 N.H. at 280–81, 281 A.2d 592–93. The plaintiff is thus barred under the doctrine of collateral estoppel from relitigating this issue in the present action.

■ Collateral estoppel applies even though the prior suit was an equity proceeding, Restatement of Judgments § 68, Comment *f*; 50 C.J.S. *Judgments* § 609 (1947), and notwithstanding that the case was tried by the court without a jury. 50 C.J.S. *Judgments* § 616 (1947).

■ Although the prior suit was a proceeding against Sceva Speare Memorial Hospital, a nonparty to this litigation, the defendants nevertheless can avail themselves of the doctrine of collateral estoppel defensively so as to bar the plaintiff. Mutuality of estoppel, once a prerequisite to a preclusion of an issue by judgment, is no longer required. *Sanderson v. Balfour supra; Brown v. R. D. Werner Co.*, 428 F.2d 375, 376 (1st Cir. 1970). What is required is that the party against whom collateral estoppel is asserted have been a party to the prior suit. Doctor Bricker was such a party, and, having litigated fully and fairly the issue of justification, "he is not entitled to an 'encore.' " *Bricker v. Crane*, 468 F.2d at 1232.

Accordingly, the defendants' motions to dismiss are to be granted.

*Remanded.*

LAMPRON and BOIS, JJ., did not sit; DOUGLAS, J., did not sit, having disqualified himself pursuant to Supreme Court Rule 25, Canon 3 (c) (1) (a); CANN, J., sat by special assignment under RSA 490:3; all concurred.